## The State *v.* Grailhe.

One who pleads his own cause, though an attorney at law, must be regarded as any other citizen, and may be punished for a contempt of court under art. 131 of the Code of Practice.

A PRINTED petition for a re-hearing in the case of *Grailhe* v. *Hown*, reported at p. 140 of this volume, having been presented by the plaintiff, an attorney at law, on the 8th of June, the court, per Slidell, J., caused the following order to be entered on the minutes :

" A brief for re-hearing, signed by the plaintiff, an attorney and counsellor at law, has been this day laid before us in this case, in which the opinion was read last Monday by the Chief Justice, as the organ of the court.   The language of this brief is extremely disrespectful, and the court cannot consistently with its duty receive a brief expressed in such language.   By art. 486 of the Code of Practice it is declared that, " advocates must plead their causes with propriety and decency.   They must not indulge in personal remarks against the parties, nor lose sight of the respect due to the court," &c.

" It is therefore ordered that, the clerk do take the said brief off the files of the court, and return it to the plaintiff."

On the 9th of June, the court ordered an attachment to be issued against *Alexander Grailhe*, returnable the next day, directing him to be brought before the court " to answer for a contempt of court committed by a petition for a re-hearing, presented by him to the court on the 8th inst., in the case of the said *Grailhe* v. *John Hown*, No. 5859."

The petition was in French.   The following extracts will show the grounds for considering it a contempt :

" La pétition en révision de l'appelant expose très respectueusement :

" Que le décret rendu par cette cour, dans ce procès, est une violation flagrante du texte formel de la loi, de l'esprit, du motif, et du but évident du législateur ; que l'exposition des motifs qui sont la base de la décision, renferme contre l'appelant une imputation grave et blessante, qu'il est de son devoir et de son honneur de repousser, comme essentiellement gratuite de la part de la cour.

    *       *       *       *       *       *

" Le raisonnement par lequel la cour est arrivée à l'adoption des motifs et du jugement du premier juge, est sans force en principe et en droit. L'appelant ne fera point à ce raisonnement l'honneur d'une réfutation sérieuse ; parce qu'il ne contient pas une seule idée, une seule proposition, un seul argument qui n'ait été à l'avance prévu, examiné, réfuté et anéanti d'une manière victorieuse, dans le mémoire imprimé, soumis à la cour avant les plaidoiries.   Tout esprit libre de préjugé reconnaîtra, après un examen grave, qu'il est de la nature de la question soumise à la haute considération de la cour, de ne pouvoir être traitée, que par l'un des procédés de logique et de raisonnement exposés dans ce mémoire.   La cour elle-même a sanctionné la vérité de cette assertion, puisqu'afin d'arriver à son étrange conclusion, elle a été forcée de se

créer une logique nouvelle, et d'admettre comme vrai, par une pétition de principe, le point le plus rebelle et le plus antipathique à la loi sur la matière.

" La cour repousse d'abord ma demande, comme étant contraire à l'équité. J'ai donc réclamé une chose injustement; j'ai donc voulu m'approprier le bien de mon voisin! J'ai donc commis une tentative immorale, que réprouvent et flétrissent également les lois de l'honneur et de la morale? J'ai donc tenté de rendre les tribunaux de mon pays, et toute cette magistrature, à qui je désire conserver la première place dans l'ordre de mon estime et de mes respects, complice d'un cupide projet? S'il en était ainsi, oui je serais bien coupable! Mais, si ce reproche, aussi grave qu'inexplicable, qui descend du haut d'une cour suprême sur un simple justiciable, n'était en réalité qu'une imputation ambitieuse, inventée tout exprès par l'organe de la cour, pour la nécessité d'un raisonnement, n'aurai-je point le droit de dire à cette cour : Vous avez voulu, par un artifice déplorable, faire tomber sur moi votre injustice, que je puis subir, et un grave reproche qui ne peut point m'atteindre ! Vous avez donc, par un seul jugement, prétendu troubler et méconnaître tout ensemble, des principes certains de nos lois, et les bases éternelles des rapports du juste et de l'injuste ! Depuis quand, la simple invocation de la maxime qu'il faut rendre à chacun ce qui lui est dû, sera-t-elle qualifiée de demande contraire à l'équité ? Rendre à César ce qui appartient à César, et à Dieu ce qui est à Dieu, ne s'est-il point toujours entendu de ce que la conscience exige, et de ce que la loi positive proscrit ? Ne s'agit-il point ici des préceptes de Dieu, et de la puissance qu'ici-bas il a investi de son autorité ? Depuis quand des juges auront-ils l'aveugle témérité de qualifier de contraire à l'équité, une demande en remboursement d'une *avance*, faite par l'autorité, et sous la sanction de la loi ? Est-ce une *avance* dont je réclame le remboursement? Voici le texte de la loi, que chacun decide, sans commentaires :

" ' Code civil, art. 672. Le voisin qui a même refusé de contribuer à l'élévation de ce mur, conserve toujours le droit de le rendre mitoyen, en payant à celui qui en a fait l'*avance*, la moitié de ce qu'il en a coûté pour le faire bâtir, suivant les règles ci-après établies.' "

" Ce reproche aussi téméraire qu'injuste, retombera donc sur le législateur, auteur de cette loi que la cour a voulu méconnaître, par je ne sais quelle fatale préoccupation d'esprit! Hé bien, décriez l'œuvre du législateur, contestez à ses vœux la prééminence qui leur est due ; substituez vos vues étroites et restreintes, comme celles de tout individu, aux siennes, qui ont la portée et l'étendue de celles de tout un peuple. Mettez à la place de sa sagesse et de ses lumières, grandes comme celles de tous les siècles et de tous les temps, votre propre sagesse, faible et fragile comme votre nature. Remplacez l'équité du législateur, consacrée en caractères ineffaçables dans le livre de ces lois, et qui ne peut être que l'interprète fidèle des relations éternelles du juste et de l'injuste entre toute chose, par vos notions d'équité, incertaines, vacillantes, mobiles, comme toutes les opinions individuelles, et dites, où vous conduira ce fatal système, si ce n'est au plus déplorable désordre, à l'anarchie judiciaire la plus complète ?

" La cour, disposée à ne ne point appliquer au procès l'art. 672 du Code Civil, quoiqu'il n'ait été fait que pour les cas de cette espèce, a dû recourir dans son égarement, afin de trouver un point d'appui quelconque à l'art. 680, qui n'a ni similitude ni analogie avec la question à juger; tandis que l'article 679 aurait forcé la cour à revenir sur ses pas, et à reprendre la seule voie légale à suivre

dans l'examen de ce procès. L'art. 679 est ainsi conçu : ' Le voisin qui n'a pas contribué à l'exhaussement, peut en acquérir la mitoyenneté, *en payant la moitié de la dépense qu'il en a coûté*, et la valeur de la moitié du sol fourni pour l'excédent d'épaisseur, s'il y en a."

"D'après cet article, que la cour ignore probablement, que devient l'insoutenable nécessité, de donner avis au voisin qu'on va construire, afin de pouvoir exiger de lui la moitié du coût primitif du mur ? Y a-t-il dans l'article 679 un seul mot qui vienne à l'appui du système de la cour ? Ne résulte-t-il pas forcément de la saine interprétation de ses dispositions, que l'article 671 a été mal interprêté, mal entendu ? J'ignore si, sur un examen plus approfondi, la cour se fera honneur de revenir de sa première erreur ; mais je ne crains point d'avancer, qu'aucun article de notre Code n'a jamais été plus mal compris, ni plus maladroitement appliqué, quoique le motif et le but du législateur, soient d'une grande évidence pour tous les yeux.

   &#42;   &#42;   &#42;   &#42;   &#42;   &#42;

"Il est vrainment déplorable d'être forcé de relever de pareilles erreurs, dans les motifs d'un jugement en dernier ressort.

   &#42;   &#42;   &#42;   &#42;   &#42;   &#42;

" La cour dans une phrase lacédémonienne, dont on pourrait retrancher encore le premier mot, pour la rendre plus nette et plus digne du langage judiciaire, reconnaît que le jugement dont est appel a violé la loi, en refusant d'accorder à l'appelant les intérêts dus de plein droit, et formellement réclamés. Quel était donc l'impérieux devoir de la cour ! On croira peut-être que c'était d'infirmer le jugement. Non. C'est la marche trop simple de la justice vulgaire ! Il faut à la cour avec des allures autocratiques, des distinctions et des subtilités dignes des meilleurs temps de la scolastique ! D'ailleurs le jugement du premier juge est si irréprochable, qu'il faut bien se garder d'y toucher, même au risque de commettre un déni de justice, qui après tout n'est point le plus grand tort d'un juge ; car, mièux vaut encore le juge qui se tait et s'abstient, que le juge qui se trompe ; le jugement de celui-ci peut léser beaucoup d'intérêts, l'autre les laisse *in statu quo*. Le décret de la cour inférieure, quoique violant la loi, restera donc confirmé. Voilà un spectacle bien édifiant, bien encourageant pour les justiciables de la Louisiane ! La Cour Suprême reconnaît, proclame l'erreur du premier juge, et refuse de la réparer, en se fondant sur deux motifs, dont je vais examiner là force et la validité, &c.

   &#42;   &#42;   &#42;   &#42;   &#42;   &#42;

" Si donc il est hors de doute que la demande en révision soit purement facultative, comment la cour aura-t-elle le courage de se refuser à l'infirmation d'un jugement qu'elle reconnaît contenir une violation de la loi, parce que je n'ai point fait une chose qui n'est point obligatoire, et que la loi a abandonné à mon jugement, et à ma libre faculte ?

" La seconde conclusion est tout aussi insoutenable ; le droit d'appel d'un jugement, sans l'intervention d'un juri, ne peut dépendre de la vaine et tres souvent oiseuse formalité d'une demande en revision. Rien dans nos lois ne peut autoriser un pareil sentiment. Dans l'affaire de *Lambeth* v. *Burney*, rapportée dans le 3me volume du Recueil de Robinson, l'ancienne cour a décidé un point qui n'a aucune espèce d'analogie avec celui-ci ; cependant il est évident que, sans avoir pris le soin de l'examiner, la cour a pris cette décision pour base de la sienne.

   &#42;   &#42;   &#42;   &#42;   &#42;   &#42;

" Quel rapport, quelle analogie, je le demande, la cour a-t-elle pu trouver en-

tre ce cas, et celui qu'elle était appelée à décider ?    Et voilà  pourtant à quelles regrettables erreurs, conduit cette vaine et  fausse science  des compilateurs de décisions judiciaires.

   " Ma tâche est remplie avec conviction, avec indépendance ; que la cour remplisse la sienne, dominée par les mêmes sentiments.   Quoi qu'il advienne, ma conscience et ma raison me  disent que, mieux vaut encore être le perdant que  le  juge qui a prononcé.

   " Par ces motifs, l'appelant conclut à ce qu'il plaise à la cour lui accorder une nouvelle audition de  cause ; et,  à défaut d'icelle, ôter  et effacer du jugement rendu les termes ou expressions d'où il résulte contre  l'appelant, le  reproche d'avoir porté  devant les tribunaux une  action, dont le  but est contraire à l'équité."

   On the next day *Grailhe* was brought into  court, when he  presented the fol-lowing paper :

   " The appearer coming  into court, begs leave to file this his peremptory ex-ception, in perpetual bar of  the proceedings commenced against him :

   "1.  The proceedings in this case are contrary to law, repugnant to the nature of  the offence imputed to this appearer, and contrary to  the uniform usages of the courts of justice of  this State, in similar cases.

   " 2.  He further says that, the charge  brought against this appearer,  by the Supreme Court, was an act  of absolute impossibility  at the moment  the writ of  attachment was issued against this defendant's person ;  that at that time the petition alluded to was not legally before the court, in consequence of any  act of this defendant.

   " 3.  That by virtue of  an order and judgment entered on the minutes of  this court, on the 8th instant, at 10 o'clock, A. M., which judgment is in the following words and figures :  'It is therefore  ordered that the clerk do take the said  brief off  the files of  the court, and return it to the plaintiff,'  the minutes and records of  this court were *instanter* expunged of  the exceptionable document; that no trace thereof  could remain before the  court,  and that this appearer was sen-tenced to take back said petition.

   "4.  That by such a  proceeding and final  judgment, this court has absolutely and forever divested itself of  any further jurisdiction or consideration touching the nature and character of  said document ;  that this appearer,  has not, since the rendition of  the decree above recited, by any means whatsoever, attempted to press upon the court the further consideration of  said petition.

   " 5.  That the decree of  the 8th instant shows conclusively that the aforesaid petition  was read, examined, construed, deliberated upon, and finally decreed by the Supreme Court.

   " 6.  That the  summary proceedings in matters of  prosecution for contempts of  court, partake of a  criminal action ;  that their object and end is  to inflict a corporeal and pecuniary punishment; that no  one can  be  tried and sentenced twice for the same act, either real or imaginary ;  that the contempt, if any  ex-ist, complained of  by the Supreme Court, has been tried once, and this appearer sentenced.

   " 7.  That a second decree or sentence of  this court against this appearer,  for the same act, would constitute an act of  violence, and a  monstrous abuse of  the powers entrusted to this court.

   " Therefore, this appearer  prays that, the present peremptory exception  be maintained as a perpetual bar against the  present proceedings; that the writ of

THE STATE
v.
GRAILHE.

attachment issued in this case be dissolved, and that he be dismissed with costs."

Another paper was also presented by the defendant on the same day, in the following words:

" In case the peremptory exceptions presented as a perpetual bar to the present prosecution should not be maintained by the Supreme Court, then this appearer, for answer to the charge brought against him, says: 1. That he is the author of the petition in question.' 2. That he delivered the same to the clerk of this court, to be filed. 3. That said petition contains no insult against the Supreme Court; that in vain will be sought therein a single word or expression of abuse, vituperation, or contempt against the Supreme Court, or any of its members. 4. That the language reprobated by law is not to be found in the document in question; that said petition does not contain a single word which cannot properly be used before any of the highest courts of judicature of any country. 5. That this appearer has not exceeded the limits of his rights and privileges, and as for his feelings and thoughts, he is answerable to no earthly tribunal. Therefore he prays, that the writ of attachment be dissolved, and that he be hence dismissed with costs," &c.

The Attorney General appeared for the State.

The judgment of a majority of the court was pronounced by

EUSTIS, C. J.* Although it will be difficult to find in the opinion of the court in the case of *A. Grailhe*, appellant, v. *John Hown*, the least pretext for the act which is the subject of this prosecution, yet, in order that the wantonness of the attack upon the court may be properly appreciated, we will proceed to read it. [The chief justice here read the opinion referred to, which will be found in the report of the case of *Grailhe* v. *Hown*, ante p. 140.]

It will be perceived, that the difference between the price of the wall in 1838 and 1844 was the prominent subject matter in dispute between the parties, the defendant being willing to pay for the value of the wall at the time he first used it in 1844, and the plaintiff insisting on recovering its cost in 1838. There was also a dispute about a trifling sum of interest, which, if the court below had allowed it, would have been less than eight dollars at the date when the appeal was taken. In the petition was also a demand for the additional sum of three hundred dollars damages, which the plaintiff alleged he had sustained by the illegal taking possession, and unlawful enjoyment, of his property by the defendant.

The day before yesterday a printed pamphlet was filed, and a copy was directed to each of the judges, containing a tissue of invective against the court, and particularly against the judge who had been its organ in delivering the opinion. The principal ground of complaint, we should conclude to be, that this court had determined that the plaintiff's claim for the price of the wall in 1838 was contrary to equity. A reference to one or two facts in the course of the trial of the cause in the court below, affords some light with regard to the plaintiff's idea of equity.

This plaintiff forced his adversary to trial in the absence of his material witness, strictly on technical grounds, as will be seen from the following extracts from the record:

Answer of *E. A. Canon*, counsel for *John Hown*, filed 28th October, 1844.

" To the honorable the first Judicial District Court of the State of Louisiana,

---

* ROST, J. recused himself, and did not sit on the trial of this rule.

THE STATE    the answer of *John Hown* of New Orleans, to the petition filed against him in
    *v.*      this honorable court by *A. Grailhe*, Esq. of New Orleans: This respondent
GRAILHE.     denies being indebted unto said plaintiff in the sum by him claimed in the peti-
tion; but that he thinks the value of that part of the wall by him used lately is
eleven dollars for a thousand bricks, according to a previous agreement he had
made with petitioner, which is also the value the said wall had at the time peti-
tioner used the same, making two hundred and four dollars and twenty-one
cents. That he owes nothing further to said petitioner; that he has made to
said petitioner a tender of said price; and prays, on the payment of said sum, to
be discharged from any further liability in this case, and as in duty bound, &c.
          (Signed)                              E. A. CANON,
                                                  of counsel."

    Affidavit for continuance, filed 26th March, 1845, in the District Court.
    "When the case was called before the court, *John Hown*, the defendant,
moved for a continuance, and in order to obtain it made the following affidavit:
    "*John Hown*, the defendant in this case, and of New Orleans, being duly
sworn, declares and says, that *Auguste Otto*, a resident for many years of New
Orleans, is a witness material in this case. Affiant was informed the day before
yesterday that *Auguste Otto* had left this city to go to Cincinnati. Affiant did
not know that said *Auguste Otto* intended to depart, and could not prevent his
departure. He further states that the testimony of said *Otto* is material to his
defence, and that this affidavit and demand for continuance are not made for
delay, but to obtain justice; he further swears that by the testimony of said
*Auguste Otto* he expects to prove that, on the 22d day of January, 1844, he
went with said *Otto* to pay Mr. *Grailhe* for the wall he had used, and that Mr.
*Grailhe* told him he would not charge more for the other parts of the wall to be
used by affiant than eleven dollars for a thousand bricks, he said affiant having
expressed an intention to build on the same lot.
          (Signed)                              JOHN HOWN.
    "Sworn and subscribed to in open court, 26th March, 1845.
          (Signed)              F. GILMORE, Deputy Clerk."
    "Defendant's bill of exceptions, filed 26th March, 1845.   District Court.
When this case came to be tried before the court, on the 26th day of March,
1845, defendant having presented to the court the affidavit annexed to this bill
of exceptions and filed, moved for a continuance on the grounds detailed in said
affidavit; but the plaintiff opposed said continuance on the grounds that said
*Auguste Otto* was never legally summoned, because of the direction of defend-
ant's counsel to leave the subpœnas at defendant's domicil. The court sup-
ported the objection and ordered the case to proceed. To this decision of the
court defendant respectfully prays to have leave to except, and have this his bill
of exceptions signed.
    "By the court: This case appears from the records in this court to have been
fixed for trial three times previously, to wit: on the 18th December, 15th Janu-
ary, and 5th of February last. On each of these occasions, as well as on the
present fixing for trial, the defendant's counsel handed to the clerk a list of his
witnesses (including the witness above named), with written directions that the
summonses should be served by leaving them at the house of defendant.
        (Signed)                       A. M. BUCHANAN, Judge."
    Testimony of *James Kathman*, taken in open court, 26th March, 1845:
    "*James Kathman*, witness for defendant, sworn: Has known *Auguste Otto*,

the person cited as a witness in this case, for the last eight years. A few days ago witness was informed that he had left the city with his family : his *(Otto's)* friends, who told witness this, said that it was *Otto's* intention, after leaving his family up the river, either at Cincinnati or St. Louis, to return to this city. Some of his friends said he had gone to Cincinnati, others to St. Louis. Witness has been at court every time this case was for trial, and saw Mr. *Otto* in court as a witness in the case. *Otto* was disposed to be a witness in the case. At the time *Hown* built the house and took possession of the wall in question, witness was building himself, and the price of bricks at the time was eleven dollars per thousand placed on the wall, and this is the price he paid.

" Cross examined : It was not witness who informed defendant that *Otto* was gone ; does not know where *Otto* is at the present time."

" *Thomas Norris,* witness for defendant, sworn: Was present when a person from Mr. *Grailhe* presented a bill for $15 the thousand to defendant. Defendant said he had agreed with plaintiff, in presence of *Otto,* for less, to wit, $11, and that he was willing to pay what was reasonable; this person again brought another bill for $18 the thousand, and again another for $19 ; and, at the time he presented the last, said that if defendant did not pay it he would sue him next day for the wall, at the rate of $20 the thousand of bricks."

" Captain *Shepherd,* witness for defendant, sworn : That on behalf of defendant he called on Mr. *Grailhe* to pay him at the same rate for the wall in question, that defendant had paid him for the other wall, to wit, the wall on New Levée street. Mr. *Grailhe* refused to accept it; this was in September last. Mr. *Grailhe* said he was entitled to the half of the costs, and showed him an article of the Code. Mr. *Grailhe* said that it would be taking money out of defendant's pocket to defend the suit, and that no honorable lawyer would defend it. Witness said he thought the article read by Mr. *Grailhe* vague ; Mr. *Grailhe* said it was positive.

" Cross examined: Witness did not tender the money ; he had not the money in his pocket ; but he was authorized by defendant to pay it."

Let it be borne in mind that this testimony of the witness is uncontradicted.

The illegality of the tender made by the defendant of the sum which he thought due and was willing to pay, and which was decreed to be due by this court and the court below, was also properly maintained, but on grounds also technical, and the defendant was thereby amerced in costs.

Thus we see this cause was conducted by the plaintiff according to the strict rules of law. Without reference to any of those matters, we came to the conclusion that the articles of the Civil Code only entitled the party plaintiff to recover the value of the wall at the time the defendant first made use of it, and not its original cost. The opinion of the court was prepared with care and deliberation, and on a re-examination of it there is not a word in it which any member of the court would change.

It was for protecting this humble defendant from the *equity* of the plaintiff, that this outrage has been directed against us.

If we find a claim authorized by no positive law, but repugnant to equity, are we not bound by the supreme law of the land to say so, and to give it as a reason for our decision ? The 79th art. of the 4th title of the constitution of 1845, declares, " that judges of all courts within this State shall, as often as it may be possible so to do, in every definitive judgment, refer to the particular law in vir-

THE STATE
v.
GRAILHE.

tue of which such judgment may be rendered, and in all cases adduce the reasons on which their judgment is founded."

The praise, or censure of a litigant, under circumstances in which this party has placed himself, is equally a matter of indifference to us; but in order to place him before the court in his proper light, let us refer to his printed argument before the decision of the cause. In this argument he says:

" This state of things, very prejudicial to public interest, increases the already very high duties and responsibilities of this honorable court. But the friends of justice and of good principles, rely with unbounded confidence on the honor, the zeal, and the eminent abilities of its distinguished members.

" A word on the equity of the appellant's case. The right of the plaintiff is based upon two articles of our Code, whose spirit and object are as transparent as sun-light. During the last thirty years (1808) the largest portion of our city has been raised under this system, and no difficulty ever sprang among so many persons interested in that grand work. The plaintiff has suffered his property to be taken from him, about two years ago, by the defendant, who has had the enjoyment of it ever since, without right, without paying the just indemnity fixed by the law. Is this equity? A prompt decision is most respectfully prayed for."

To what a situation would the administration of justice be reduced, were its officers in the last resort to be thus exposed to the indecorous animadversions of disappointed litigants, whose interests, in the furtherance of justice, have been crossed, and whose purposes have been defeated by the judgment of courts?

Could we attribute this petition to the mere excitement resulting from disappointment, so far as we are personally concerned, we should be disposed to pass it over, without any other notice than striking it from the records of the court, and returning it to the source whence it originated. But the party well knows that an act of this kind, premeditated and deliberate, can only be met in one way by this court, and that is by the punishment of its author. We are bound to administer the law, without fear, favor or affection. Those who come before us are equal in the eye of the law, and our concern is not with persons, but with things. That in deciding various cases, often involving new and difficult subjects, we should fall into errors, is not at all surprising; but an opportunity is always afforded to correct them on a revision of the case. We know the privileges of the bar, and on all occasions respect them. We rely upon its assistance in the investigation of the difficult questions that come before us, and we place no restriction on, but invite the severest scrutiny of all our decisions, for the correction of the errors we may fall into is as much our duty as it is theirs. We desire the examination to be free, and we know how to make allowance for the zeal with which an independent advocate may maintain the cause which he believes to be just. But when a party chooses to plead his own cause, and makes use of his position to attempt to bring the administration of justice into contempt, by a gross breach of decorum in calumniating and misrepresenting our motives, we have but one course to pursue, and that is to punish the offender.

In the case of *The State* v. *Richard Raynal Keen*, 11 La. 600, the late Supreme Court held that, attorneys and counsellors, in the management of their own cases, stand on the same footing as other citizens, and cannot claim the indulgence which the law grants to those, who, in defending the rights of others, are carried away by an intemperate zeal beyond the bounds of moderation.

The offence in this case was committed, on an application for a rehearing in his own case. *Keen* was an attorney, but was punished for the contempt under article 131 of the Code of Practice, which provides that, "the judges of the Supreme, District, and Parish courts have the power to punish all contempts of their authority, by fine not exceeding fifty dollars, and imprisonment not ex ceeding ten days, for each offence of that kind."

THE STATE
*v.*
GRAILHE.

In the judgment we are about to pronounce a majority of the judges concur. It is therefore ordered that the defendant, *Alexander Grailhe,* pay a fine of fifty dollars, and the costs of the prosecution; and that he be imprisoned during forty-eight hours, and until said fine and costs be paid.

SLIDELL, J., dissenting. The defendant pleads the peremptory exception of *res judicata.* He refers to the opinion of the court rendered on monday, in which a brief consideration of the disrespectful tone of the application for a rehearing, is followed by a decree ordering the brief to be taken from the files of the court.

The defendant, in my opinion, incorrectly maintains that this order was the imposition of a penalty upon him, by refusing him a rehearing. I do not so consider the order. The order was rendered in the morning of monday, at 10 o'clock. It was known to the defendant before midday ; he had still the residue of the day in which to file an application for a rehearing, framed in language which might fully explain his legal propositions, without expressions unworthy of himself as a citizen and of the dignity and character of the court. There was, in my opinion, then, no deprivation of the right of still filing a petition for a rehearing, abundantly sufficient to set forth the party's arguments for the required relief.

In addition to the above consideration, the respondent alleges that this opinion and order involve a consideration of the objectionable petition, and an action upon it; that the opinion condemns the petition as disrespectful, and expels it from the records of the court as unworthy to remain there.

Upon strictly technical grounds, this decree does not perhaps form *res judicata* as to the contempt which the defendant is here called to answer. But I cannot reject the suggestion of my own mind that, in preparing that opinion and decree, as a member of this court, I did consider that the opinion and order involved, though not a corporeal, yet a moral punishment, inflicted upon the defendant. I presume it was so considered by those who heard the opinion and decision read ; and that, as a permanent memorial in the records and printed reports of this court, it will be read in that sense hereafter.

The whole tone and temper of the defendant's brief is disrespectful even to insult ; and the opinion and order hitherto given were a light punishment of so gross a departure from his duty as a citizen, and especially as a counsellor at law. But it is to my mind a punishment, and sustains, to some extent, the exception which has been filed. The proceeding against the defendant now before us, partakes of the nature of a criminal proceeding ; and though the question be not clear in his favor, yet, if there be any doubt, he is entitled to the benefit of it.

I think, after what has thus occurred, the defendant should be left to the moral punishment which has been already inflicted upon him, and to the reflection that he has violated his duty as a citizen, by not only writing, but by printing and distributing, a document, so grossly indecorous, and so evidently intended, whatever may be its effect, to attack the respectability of this tribunal, impugn the motives of its members, and impair the public confidence in the administration of justice.

The punishment was, I think, on reflection, too slight; but it was a punishment in my opinion. I therefore think the prisoner should be discharged.

As to what is now said by the court respecting the circumstances of the litigation, and as to the correctness of the original decision, I fully concur. But I dissent from the present decree inflicting what I consider equivalent to *further* punishment. This opinion is very hastily prepared at the hearing this day, and is, therefore, given with diffidence, and with regret that I should find myself, in an important matter, dissenting from my brethren.