## In re TERRY.

### (*Circuit Court, D. California, N. D.* September 17, 1888.)

CONTEMPT—PUNISHMENT—IMPRISONMENT—REMISSION.

Defendant and his wife were present in court, of which he was an attorney, during the reading of an opinion in a cause to which they were parties; and the latter, rising, addressed the presiding justice, and charged him with having been bribed to render the decision. She refusing to be silent, the officer, under order of the court, attempted to remove her, when defendant struck him a severe blow. Both she and defendant resisted, using profane, opprobrious, and threatening language towards court, officers, and those assisting, and were only overcome by force. Defendant attempted to draw a bowie-knife immediately after striking the marshal, and as he was going out of the court-room succeeded in drawing it, and in the corridor adjoining brandished it, with threats, until it was forcibly taken from him. His wife also had a loaded pistol in her satchel. He was sentenced to six months' imprisonment for contempt, and, after a few days, presented a petition for release, which stated that he did not intend to say or do anything disrespectful to the court or any of its judges, and attempted a justification, but misstated the facts, as known to the court and set forth in the affidavits of others present, and expressed no regret for his acts. *Held*, that the sentence should not be remitted; that the forcible resistance to an officer of the United States in the execution of the lawful orders of their courts was an indignity and insult to the power and authority of the government, which were not extenuated by any averment that no disrespect was intended to the courts making the orders.

Commitment for Contempt.

On September 3, 1888, while the judges of the United States circuit court, holden at San Francisco, were delivering their opinion in the cases of Frederick W. Sharon against David S. Terry and wife, and Francis G. Newlands and others against the same defendants, Mrs. Terry, one of the defendants, interrupted Mr. Justice FIELD, who was reading the opinion, and was guilty of such misbehavior in the presence of the court that the marshal was ordered by the court to remove her from the court-room. The marshal proceeded to execute this order, when he was assaulted and beaten, in the presence of the court, by Terry, who at the same time thrust his right hand under his vest, where he had a bowie-knife concealed on his person, apparently for the purpose of drawing it, when the deputy-marshals and citizens present promptly laid hold of him, and restrained further violence until Mrs. Terry was taken from the court-room. When this was done, Terry was allowed to leave the court-room, and was accompanied by officers to the door leading to the adjoining corridor. As he was about leaving the room, he drew a bowie-knife from his bosom, and as he stepped into the corridor he brandished it, with threats of violence against those who opposed his going to his wife, when

he was again .seized by deputy-marshals and others, and in the struggle ensuing his knife was taken from him. The judges holding the court were Hon. STEPHEN J. FIELD, Circuit Justice; Hon. LORENZO SAWYER, Circuit Judge; and Hon. GEORGE M. SABIN, District Judge. Hon. OGDEN HOFFMAN was present, sitting with the judges, but merely as a spectator. As soon as the disturbance had ceased, Justice FIELD proceeded with the reading of the opinion, after which orders were made by the court adjudging Mr. and Mrs. Terry guilty of contempt, and directing their imprisonment as a punishment therefor. The orders are as follows:

"At a stated term, to-wit, the July term, A. D. 1888, of the circuit court of the United States of America, of the Ninth judicial circuit, in and for the Northern district of California, held at the court-room in the city and county of San Francisco, on Monday, the 3d day of September, in the year of our Lord one thousand eight hundred and eighty-eight. Present: The Honorable Stephen J. Field, associate justice of the supreme court of the United States; the Honorable Lorenzo Sawyer, circuit judge; the Honorable George M. Sabin, United States district judge, district of Nevada.

*"In the Matter of Contempt of David S. Terry.*

"Whereas, on this 3d day of September, 1888, in open court, and in the presence of the judges thereof, to-wit, Hon. Stephen J. Field, circuit justice, presiding, Hon. Lorenzo Sawyer, circuit judge, and Hon. George M. Sabin, district judge, during the session of said court, and while said court was engaged in its regular business, hearing and determining causes pending before it, one Sarah Althea Terry was guilty of misbehavior in the presence and hearing of said court; and whereas, said court thereupon duly and lawfully ordered the United States marshal, J. C. Franks, who was then present, to remove the said Sarah Althea Terry from the court-room; and whereas, the said United States marshal then and there attempted to enforce said order, and then and there was resisted by one David S. Terry, an attorney of this court, who, while the said marshal was attempting to execute said order, in the presence of the court, assaulted the said United States marshal, and then and there beat him, the said marshal, and then and there wrongfully and unlawfully assaulted said marshal with a deadly weapon, with intent to obstruct the administration of justice, and to resist such United States marshal, and the execution of the said order; and whereas, the said David S. Terry was guilty of a contempt of this court by misbehavior in its presence, and by a forcible resistance in the presence of the court to a lawful order thereof in the manner aforesaid: Now, therefore, be it ordered and adjudged by this court that the said David S. Terry, by reason of said acts, was and is guilty of contempt of the authority of this court, committed in its presence, on this the 3d day of September, 1888; and it is further ordered that said David S. Terry be punished for said contempt by imprisonment for the term of six months; and it is further ordered that this judgment be executed by imprisonment of the said David S. Terry in the county jail of the county of Alameda, in the state of California, until the further order of this court, but not to exceed said term of six months; and it is further ordered that a certified copy of this order, under the seal of the court, be process and warrant for executing this order."

"At a stated term, to-wit, the July term, A. D. 1888, of the circuit court of the United States of America, of the Ninth judicial circuit, in and for the Northern district of California, held at the court-room in the city and county of San Francisco, on Monday, the 3d day of September, in the year of our

Lord one thousand eight hundred and eighty-eight. Present: The Honorable Stephen J. Field, associate justice of the supreme court of the United States; the Honorable Lorenzo Sawyer, circuit judge; the Honorable George M. Sabin, United States district judge, district of Nevada.

*"In the Matter of Contempt of Sarah Althea Terry.*

"Whereas, on this 3d day of September, 1888, in open court, and in the presence of the judges thereof, to-wit, Hon. Stephen J. Field, circuit justice, presiding, Hon. Lorenzo Sawyer, circuit judge, and Hon. George M. Sabin, district judge, during the session of said court, and while said court was engaged in its regular business, hearing and determining causes pending before it, the said Sarah Althea Terry interrupted the proceedings of said court by loud and boisterous language, and was thereupon by said court ordered to be silent and to take her seat, and refused so to do, but continued to use boisterous and insulting language, and asked the presiding justice, "how much he was paid for his opinion," and then and there used towards the court, and in its presence, other contemptuous and scandalous language; and, whereas, the said court then and there made an order that the said United States marshal remove the said Sarah Althea Terry from the court-room of said court, which order the said marshal then and there attempted to execute, and which said order, made in her presence and hearing, the said Sarah Althea Terry resisted then and there in the presence of the court; and, whereas, the said Sarah Althea Terry was thereby guilty of a contempt of this court by misbehavior and in its presence, and by a resistance in its presence to a lawful order thereof, and in the manner aforesaid: Now, therefore, be it ordered and adjudged by this court that the said Sarah Althea Terry, by reason of the acts aforesaid, was, and is guilty of contempt of the authority of this court, committed in its presence on this 3d day of September, 1888; and it is further ordered that Sarah Althea Terry be punished for said contempt by imprisonment for the term of thirty days; and it is further ordered that this judgment be executed by the imprisonment of the said Sarah Althea Terry in the county jail of the County of Alameda, in said state of California, until the further order of this court, but not to exceed said term of thirty days; and it is further ordered that a certified copy of this order under the seal of the court be the process and warrant for executing this order."

September 12, 1888, D. S. Terry presented the following petition·

"IN THE CIRCUIT COURT OF THE UNITED STATES, NINTH CIRCUIT, NORTHERN DISTRICT OF CALIFORNIA.

*"In the Matter of Contempt of David S. Terry.*

*"To the Honorable Circuit Court aforesaid:* The petition of David S. Terry respectfully represents: That in all the matters and transactions, occurring in the said court on the 3d day of September, inst., upon which the order in this matter was based, your petitioner did not intend to say or do anything disrespectful to said court, or to the judges thereof, or to any one of them. That when petitioner's wife, the said Sarah A. Terry, first arose from her seat, and before she uttered a word, your petitioner used every effort in his power to cause her to resume her seat, and remain quiet, and he did nothing to encourage her in her acts of indiscretion; when this court made the order that petitioner's wife be removed from the court-room, your petitioner arose from his seat with the purpose and intention of himself removing her from the court-room quietly and peaceably, and he had no intention or design of obstructing or preventing the execution of the said order of the court; that he never struck or offered to strike the United States marshal until the said marshal had assaulted himself, and had in his presence violently, and, as he believed, unnecessarily, assaulted petitioner's wife. Your petitioner most

solemnly avers that he neither drew or attempted to draw any deadly weapon of any kind whatever in said court-room, and that he did not assault or attempt to assault the United States marshal, with any deadly weapon in said court-room or elsewhere.   And in this connection he respectfully represents that after he had left said court-room he heard loud talking in one of the rooms of the United States marshal, and among the voices proceeding therefrom he recognized that of his wife, and he thereupon attempted to force his way into said room through the main office of the United States marshal; the door of this room was blocked with such a crowd of men that the door could not be closed; that your petitioner then for the first time drew from inside his vest a small sheath-knife, at the same time saying to those standing in his way in said door that he did not want to hurt any one; that all he wanted was to get in the room where his wife was.   The crowd then parted, and your petitioner entered the doorway, and there saw a United States deputy-marshal with a revolver in his hand pointed to the ceiling of the room.   Some one then said, ' Let him in, if he will give up his knife,' and your petitioner immediately released hold of the knife to some one standing by.   In none of these transactions did your petitioner have the slightest idea of showing any disrespect to this honorable court, or any of the judges thereof.   That he lost his temper, he respectfully submits was a natural consequence of himself being assaulted when he was making an honest effort to peaceably and quietly enforce the order of the court so as to avoid a scandalous scene, and of his seeing his wife so unnecessarily assaulted in his presence.   Wherefore your petitioner respectfully requests that this honorable court may, in the light of the facts herein stated, revoke the order made herein committing him to prison for six months.   And your petitioner will ever pray, etc.

"Dated, September 12, 1888.

"*State of California, County of Alameda—ss.:*   David S. Terry, being duly sworn, deposes and says that the facts set forth in the foregoing petition are true, to the best of his knowledge and belief.                          D. S. TERRY.

"Subscribed and sworn to before me, this 12th day of September, 1888.
[Seal.]                                              "GEORGE M. SHAW, Notary Public.

Affidavits were also filed by J. C. Franks, United States marshal, A. L. Farish, N. R. Harris, John Taggart, and W. W. Presbury, deputy-marshals, in attendance at the time of the occurrence, and Henry Finnegass, Benjamin F. Bohen, William Glennon, Thomas B. Van Buren, J. H. Miller, Alfred Barstow, and Joseph D. Redding, who were also eye-witnesses of the affair.   Two only of the affidavits are published in full, that of Marshal Franks and that of Mr. Finnegass, as they detail sufficiently the most important features.   Extracts from three others are also given.

### AFFIDAVIT OF MR. FRANKS, THE MARSHAL.

"*State of California, City and County of San Francisco—ss.:*   I, J. C. Franks, being duly sworn, depose and say that I am and have been since March, 1886, the United States marshal for the Northern district of California.   That on the 3d day of September, 1888, I was standing where I usually stand in the court-room, on the west side of the railing inclosing the place where the clerk of the court sits.   While Judge Field was reading his decision in the case of Sharon *v.* Terry, Judge Terry and his wife, Mrs. Terry, sat at the large table for attorneys in front of the railing around the clerk's desk; they being to my left, Mr. Terry being further away from me.   Judge Field had read for a few minutes, when Mrs. Terry stood up, interrupting the court, said, among other things, 'You have been paid for this decision.'   Judge

Field then ordered her to keep her seat, but she continued, saying, 'How much did Newlands pay you?' Then Judge Field, looking towards me, said, 'Mr. Marshal, remove that woman from the court-room.' Mrs. Terry said in a very defiant manner, 'You cannot take me from the court.' I immediately stepped to my left to execute the order, passing Judge Terry, to where Mrs. Terry was standing. Mrs. Terry immediately sprang at me, striking me in my face with both her hands, saying, 'You dirty scrub, you dare not remove me from this court-room.' 'Mrs. Terry made this assault upon me before I had touched her. I immediately moved to take hold of her when Judge Terry threw himself in my way, getting in front of me, and, unbuttoning his coat, said, in a most defiant and threatening manner, 'No man shall touch my wife; get a written order,' or words to that effect. I put out my hand towards him, saying, 'Judge, stand back; no written order is required;' and just as I was taking hold of Mrs. Terry's arm, Judge Terry assaulted me, striking me a hard blow in my mouth, with his right fist, breaking one of my teeth, and I immediately let his wife go, and pushed him back. He then put his right hand in his bosom, while at the same time Deputy Farish, Detective Finnegass, and other citizens, caught him by the arms, and pulled him down in his chair. I caught hold of Mrs. Terry again, Mr. N. R. Harris, one of my deputies, coming to my assistance, and we took her out of the court-room into my office; she resisting, scratching, and striking me all the time, using violent language, denouncing and threatening the judges and myself, claiming that I had stolen her diamonds and bracelets from her wrists, and calling several times to Porter Ashe to give her her satchel; I, during the whole time using no more force than was necessary, considering the resistance made by her, addressing her as politely as possible. When we got her into the inner room of my office, I left her in charge of Mr. Harris, went into the main office, saw a body of men scuffling at the door, heard Deputy-Marshal Taggart say, 'If you attempt to come in here with that knife, I will blow your brains out.' I said, 'What, has he a knife?' Deputy Farish answered, and said, 'He had a knife, but we took it away.' I then took hold of Judge Terry, and, with assistance of others, pulled him in the main office, and shut the door. I had him and his wife placed in my private office in charge of Deputy-Marshals Harris, Donnelly, and Taggart. I then went into the court-room, and when I had been in there but a short time, Mr. Farish came in and said, 'Mrs. Terry wants her satchel, which Porter Ashe has.' I went into the corridor, and found Mr. Ashe with the satchel. I requested him to hand it to me. At first he refused, saying it was Mrs. Terry's private property, and he was going to deliver it to her. I told him she was my prisoner, and her effects should be in my custody, and if he did not give the satchel up I would place him under arrest. He then gave it to me, and I told him to come with me into my office, and I would open it in his presence. He did so, and I opened it, and took a pistol therefrom,—a self-cocking 41 caliber Colt's pistol, with five chambers loaded, the sixth being empty,—after which I delivered the satchel to Mrs. Terry. Mr. Ashe then said he did not intend to give the satchel to her with the pistol in it. I append hereto a photograph of the bowie-knife taken from the hands of Judge Terry by a citizen, with the assistance of my officers, and handed to me by the citizen, and also a photograph of the pistol taken from Mrs. Terry's satchel, both photographs exhibiting the actual size of these weapons. All this occurred in the appraisers' building, corner of Washington and Sansome streets, in the presence of and within the hearing of the United States judges, while they were delivering the decision. I noticed Judge Terry and his wife during the reading of the opinion; and, as some points were being decided against them, I carefully observed them before I commenced to remove Mrs. Terry from the court-room; and there was no word or act that I observed on the part of Judge Terry to restrain his wife in her conduct, or to take her from the court-room,

or to assist me in doing so. On the contrary, Judge Terry resisted me with violence, as I have stated. After Judge Terry was placed in my inner office, as I have above stated, he used very abusive language concerning the judges, referring to Judge Sawyer as 'that corrupt son of a bitch,' and also saying, 'Tell that bald-headed old son of a bitch, Field, that I want to go to lunch;' and after the order was made committing him six months for contempt, Judge Terry said: 'Field thinks that when I get out, he will be away; but I will meet him when he comes back next year, and it' will not be a very pleasant meeting for him.' Mrs. Terry said several times that she would kill both Judges Field and Sawyer.                                              J. C. FRANKS.

"Subscribed and sworn to before me, this 17th day of September, A. D. 1888.        F. D. MONCKTON,

"Commissioner U. S. Circuit Court, Northern District of California.

### AFFIDAVIT OF HENRY FINNEGASS.

"*State of California, City and County of San Francisco—ss.:* Henry Finnegass, being first duly sworn, deposes and says: That he is a citizen of the United States, over 45 years of age; that he was agent of the secret service division of the United States treasury department for the Pacific coast from March 1, 1871, to May 1, 1888, and during most of said time has also acted as a deputy United States marshal for the district of California; that he was present in the court-room of the United States circuit court in the appraiser's building, corner of Sansome and Washington streets, in the city and county of San Francisco, on September 3, 1888, when the judges were delivering their opinion in the cases of Sharon *v.* Terry *et al.*, and Newlands *et al. v.* Terry *et al.* The opinion of the court was being delivered by Judge FIELD, and when he had proceeded with the reading of the opinion for twenty minutes, commencing at 11 o'clock, he was interrupted by Mrs. Terry rising to her feet and saying: 'Judge are you going to take the responsibility of ordering me to deliver up that marriage contract?' Judge FIELD immediately said, 'Take your seat, madam.' Mrs. Terry retorted, 'How much did you get for that decision? You have been bought by Newlands.' The judge then said, 'Marshal, remove that woman from the court-room, and the court will deal with her hereafter.' During this time Mrs. Terry was standing almost immediately in front of Judge FIELD, at the table near the railing outside of the clerk's desk. When Judge FIELD ordered the marshal to remove Mrs. Terry from the court-room, she sat down, saying in a loud voice and indignant and insulting manner, 'I won't go out, and you can't put me out,' and other words to that effect. During this time Marshal Franks was standing at the west end of the railing around the clerk's desk, and about ten feet distant from where Mrs. Terry was standing and sitting. Judge Terry was sitting beside Mrs. Terry at her right hand, and between Mrs. Terry and the marshal. Immediately upon Judge FIELD directing the marshal to remove Mrs. Terry from the court-room, the marshal walked around behind Judge Terry towards Mrs. Terry. While the marshal was thus proceeding, Judge Terry rose to his feet, saying, as the marshal passed him, 'Don't touch my wife; get a written order.' The marshal, in effect, replied that he had order enough. Then Judge Terry said, 'No God damn man shall touch my wife;' and he tried to get between the marshal and his wife. The marshal went to take hold of Mrs. Terry's arm, when Judge Terry drew back and struck him with his right fist a severe blow on the face. The marshal then pushed Judge Terry with his hands. Then Judge Terry unbuttoned his coat, and thrust his right hand into his bosom through the open place of his vest. When I saw him make this motion I sprang towards him, and caught him by the right arm, and pulled his hand away from his vest, and pulled him back on a chair. Two other men took hold of him at the same time and we held him down. He was swearing

all the time, saying, 'God damn you, let me up; you sons of bitches, let me up;' and other exclamations of that character. However, we held him there until his wife was taken forcibly out of the room by Marshal Franks and his assistant. Then we let Terry up, and I went up with him to near the swinging doors connecting the court-room with the passage-way leading into the corridor. About five feet from the swinging doors, and in the court-room, I released my hold of Judge Terry's right arm, and let go of him, and he went through the door, and I held one side of the door open with my left hand, and this door was not closed until Judge Terry had drawn his bowie-knife, and was brandishing it in the passage-way leading to the corridor. When he got a few feet from the swinging doors into the passage-way, I heard some one say, 'Look out, he's got a knife.' I let go the swinging door and ran out, and caught him in the said passage-way by the right arm, in which he held his knife, and at the same instant a deputy-marshal by the name of Farish caught hold of Judge Terry He violently resisted us, and we struggled from the passage-way into the corridor, and across the corridor into the door leading into the marshal's office. During this time Judge Terry shouted loudly, using such exclamations as 'Let go, let go, you sons of bitches; I will cut you into pieces; I will go to my wife.' We struggled into the space before the counter in the marshal's office, where we took Judge Terry's knife from him. I loosed some of his fingers, and Deputy-Marshal Farish loosed some, and a man standing by pulled the knife from Judge Terry's hand. The knife, including the handle, is $9\frac{1}{4}$ inches long, the blade being five inches long, having a sharp point, and is what is commonly called a 'bowie-knife.' Immediately after this was done Marshal Franks came out from his inner office, where he had placed Mrs. Terry, and said, 'Has he got a knife?' Deputy Farish replied, 'He did have one, but it has been taken away from him.' Then the marshal allowed Judge Terry to go in and join his wife in the marshal's inner office, and he was there detained. I went back into the court-room, and remained during the reading of the opinion. The reading was finished about half past 12 o'clock. Terry's conduct throughout this affair was most violent. He acted like a demon; and all the time while in the corridor, and before the counter of the marshal's office, he used loud and violent language, which could be plainly heard in the court-room, and, in fact, throughout the building. Mrs. Terry resisted with all her power the efforts of the marshal in taking her from the court-room, and he was compelled to remove her forcibly. While being removed she screamed and shouted her abuse of the judges, saying they had been bought, and so forth; and also abused Marshal Franks, calling him a hireling, paid to do his dirty work, and words to that effect.                                    HENRY FINNEGASS.

"Subscribed and sworn to before me, this 13th day of September, A. D. 1888.      F. D. MONCKTON,
"Commissioner United States Circuit Court, Northern District of California."

Deputy-Marshal Farish, in his affidavit, says:

"After Mr. Franks had gone out with Mrs. Terry, we released our hold of him, and he rushed out of the court-room. I followed close after him, and in passing through the passage-way leading from the court-room into the corridor of the court building, I noticed he had a bowie-knife in his hand. I grappled with him, and caught his hand; Detective Finnegass seizing him at the same time. He struggled, and tried to get his hands free, swearing and threatening all the time. We struggled together till we got to the outer door leading into the marshal's rooms, when Judge Terry, getting his knife into his left hand, which was disengaged, (I and others having hold of his right,) raised it above our heads, and with some expression I could not exactly understand said, in effect, 'I will cut you in pieces.' I jumped back, and as he turned to go in

the office, I cried out to shut the door, at the some time catching his arm, and with the assistance of Mr. Finnegass and another party, a stranger to me, we took the knife from him just as he was attempting to go in the inner door."

And again:

"Although I noticed Judge Terry closely during this affair, I did not ob-observe any act or word on his part to restrain Mrs. Terry, after the order was made to remove Mrs. Terry, in what she was doing, or to have her go from the court-room; on the contrary, Judge Terry resisted the marshal, as I have stated. The marshal, so far as I could see, treated Mrs. Terry in every manner and respect politely and courteously."

Deputy-Marshal Harris, in his affidavit, says:

"I was closely observing Judge Terry and his wife when she interrupted Judge FIELD; saw Mrs. Terry say something to Judge Terry, to which he nodded, as if assenting to what she had said. Immediately after this Mrs. Terry rose to her feet, and commenced talking, as I have above stated. Judge Terry did not attempt in any way to stop Mrs. Terry, or prevent her from doing what she did, as I have above stated."

Deputy-Marshal Presbury, in his affidavit, says:

"Judge Terry, having been released from the grasp of those who held him, proceeded toward the door, feeling apparently for something within his waist-coat. I stepped to his side, and saw that he was drawing from his bosom a large knife, which he fairly exposed just inside of the court-room door. On emerging from the door he held the knife above his head, saying, 'I am going to my wife.' I walked beside him until he reached the outside door of the marshal's office, where his further progress was prevented by Chief Deputy Farish and two or more of the marshal's deputies, together with Detective Finnegass and others. After a struggle the knife was taken from him, and he was permitted to join his wife in the marshal's room. He remained there until an order was received from the court committing him and his wife to jail, whereupon they were taken from the building by the marshal and his deputies."

Before FIELD, Circuit Justice, SAWYER, Circuit Judge, and SABIN, District Judge.

*S. Heydenfeldt, Esq.*, presented the petition to the circuit justice.

*John A. Stanley, Esq.*, submitted the following authorities from the supreme court of North Carolina on the point that a disavowal on oath of any intended disrespect to the court purges the contempt and entitles the offending party to be discharged: *In re Moore*, 63 N. C. 408; *Ex parte Biggs*, 64 N. C. 217, 218; *In re Walker*, 82 N. C. 98, 99.

FIELD, Circuit Justice. We have received a petition from David S. Terry, praying that the order of this court committing him to prison for contempt may be revoked. To pass intelligibly upon the petition a brief statement of the circumstances under which the order was made will be necessary. On the 3d of September, instant, the cases of Frederick W. Sharon, as executor, against David S. Terry and Sarah Althea Terry, his wife, and of Francis G. Newlands, as trustee, and others against the same parties, were before this court on demurrers to bills to revive and carry into execution the final decree in the suit of William Sharon *v.* Sarah Althea Hill, and were decided on that day. Shortly before the court

opened the defendants came into the court-room, and took their seats within the bar at the table next to the clerk's desk, and almost immediately in front of the judges; the defendant David S. Terry being at the time armed with a bowie-knife concealed on his person, and the defendant Sarah Althea, his wife, carrying in her hand a small satchel, which contained a revolver of six chambers, five of which were loaded. The court at the time was held by the justice of the supreme court of the United States assigned to this circuit, who was presiding; the United States circuit judge of this circuit; and the United States district judge of the district of Nevada, called to this district to assist in holding the circuit court. Almost immediately after the opening of the court the presiding justice commenced reading its opinion in the cases mentioned, but had not read more than one-fourth of it, when the defendant Sarah Althea Terry arose from her seat, and asked him, in an excited manner, whether he was going to order her to give up the marriage contract, to be canceled. The presiding justice replied, "Be seated, madam." She repeated the question, and was again told to be seated. She then cried out in a violent manner that the justice had been bought, and wanted to know the price he held himself at; that he had got Newlands' money for his decision, and everybody knew it,—or words to that effect. It is impossible to give her exact language. The judges and parties present differ as to the precise words used, but all concur as to their being of an exceedingly vituperative and insulting character. The presiding justice then directed the marshal to remove her from the court-room. She immediately exclaimed that she would not go from the room, and that no one could take her from it, or words to that effect. The marshal thereupon proceeded towards her to carry out the order for her removal, and compel her to leave, when the defendant David S. Terry rose from his seat, evidently under great excitement, exclaiming, among other things, that, "No living man shall touch my wife," or words of that import, and dealt the marshal a violent blow in his face He then unbuttoned his coat, and thrust his hand under his vest, where his bowie-knife was kept, apparently for the purpose of drawing it, when he was seized by persons present, his hands held from drawing his weapon, and he himself forced down on his back. The marshal then removed Mrs. Terry from the court-room. Soon afterwards Mr. Terry was allowed to rise, and was accompanied by officers to the door leading to the corridor, on which was the marshal's office. As he was about leaving the room, or immediately after stepping out of it, (and it is immaterial which,) he succeeded in drawing his knife, when his arms were seized by a deputy-marshal and others present, to prevent him from using it, and they were able to wrench it from him only after a violent struggle. The affidavits of officers of the court and others present, filed herewith, detail the facts. For their conduct and resistance to the execution of the order of the court, the defendants, Sarah Althea Terry and David S. Terry, were adjudged guilty of contempt, and ordered to be imprisoned; the former for thirty days, and the latter for six months. The commitment of Terry recited the contemptuous conduct of Sarah Althea, and the order of the court directing

the marshal to remove her from the court-room, and that, while the marshal was attempting to execute the order,' the said David S. Terry assaulted him in the presence of the court, and beat him; and also that said Terry wrongfully and unlawfully assaulted the marshal with a deadly weapon, with intent to obstruct the administration of justice.     There were two matters recited for which Terry was adjudged guilty of contempt: *First*, resisting the marshal in the execution of the order, and beating him; and, *second*, unlawfully assaulting the marshal with a deadly weapon.

Section 725 of the Revised Statutes defines the powers of the courts of the United States in matters of contempt.    It declares that "the said courts shall have power   *   *   *   to punish by fine or imprisonment, at the discretion of the court, contempts of their authority: provided, that such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice; the misbehavior of any of the officers of said court in their official transactions; and the disobedience or resistance by any such officer, or by any party, juror, witness, or other person to any lawful writ, process, order, rule, decree, or command of the said courts."   As thus seen, contempts embrace three classes of acts: *First*, the misbehavior of any person in the presence of the courts, or so near thereto as to obstruct the administration of justice; *second*, the misbehavior of any of the officers of the court in their official transactions; and, *third*, the disobedience or resistance by any such officer, or by any party, juror, witness, or other person to any lawful writ, process, order, rule, decree, or command of the courts.    The misbehavior of the defendant David S Terry, in the presence of the court, in the court-room, and in the corridor, which was near thereto, and in one of which (and it matters not which) he drew his bowie-knife, and brandished it, with threats against the deputy of the marshal and others aiding him, is sufficient of itself to justify the punishment imposed.    But, great as this offense was, the forcible resistance offered to the marshal in his attempt to execute the order of the court, and beating him, was a far greater and more serious affair    This resistance and beating of its officer was the highest possible indignity to the government.    When the flag of the country is fired upon and insulted, it is not the injury to the bunting, the linen, or silk on which the stars and stripes are stamped which startles and arouses the country.    It is the indignity and insult to the emblem of the nation's majesty which stirs every heart, and makes every patriot eager to resent them.    So the forcible resistance to an officer of the United States in the execution of the process, orders, and judgments of their courts is in like manner an indignity and insult to the power and authority of the government, which can neither be overlooked nor extenuated.

. The defendant, David S. Terry, now prays the court to revoke the order committing him.    In his petition he sets forth that in the transactions in the circuit court on the 3d instant, upon which his commitment was made, he did not intend to say or do anything disrespectful

to the court or to the judges thereof, or to any one of them. He alleges that when his wife first arose from her seat, and before she had uttered a word, he used every effort in his power to cause her to resume her seat, and to remain quiet, and that he did nothing to encourage her in what he terms "her acts of indiscretion." That when the order for her removal from the court-room was made, he rose from his seat for the purpose of removing her himself, quietly and peaceably, and had no intention of disturbing or preventing the execution of the order of the court. That he never struck, or offered to strike, the marshal until the marshal had assaulted him, and had, in his presence, violently, and, as he believed, unnecessarily, assaulted his wife. That he neither drew, nor attempted to draw, any deadly weapon of any kind in the court-room; and that he did not assault, or attempt to assault, the United States marshal with any deadly weapon, in the court-room or elsewhere. He represents that after he had left the court-room he heard loud talking in one of the rooms of the marshal, and among the voices proceeding therefrom he recognized that of his wife; that he then attempted to force his way into that room, and, finding it barred by a crowd of men, so that the door could not be closed, he, for the first time, drew from inside his vest a small sheath-knife, at the same time saying to the crowd standing in his way, that he did not want to hurt any one, but that all he wanted was to get into the room where his wife was; that the crowd then parted, and he entered the doorway, where some one said, "Let him in, if he will give up his knife;" and he then immediately gave up his knife. The petitioner further alleges that in none of these transactions did he have the slightest idea of showing any disrespect to the court or to any of its judges, and that the fact that he lost his temper was a natural consequence of his being himself assaulted, when he was making an honest effort to enforce the order of the court, and of his seeing his wife assaulted in his presence. Upon this statement he asks the revocation of the order committing him to prison.

We have read this petition with great surprise at its omissions and misstatements. As to what occurred under our immediate observation, its statement does not accord with the facts as we saw them; as to what occurred at the further end of the room, and in the corridor, its statement is directly opposed to the concurring accounts of the officers of the court and parties present, whose position was such as to preclude error in their observations. According to the sworn statement of the marshal, which accords with our own observation, so far from having struck or assaulted Terry, he had not even laid his hands upon him when the violent blow in the face was received. And it is clear beyond controversy that Terry never voluntarily surrendered his bowie-knife, and that it was wrenched from him only after a violent struggle. We can only account for his misstatement of facts as they were seen by numerous witnesses, by supposing that he was in such a rage at the time that he lost command of himself, and does not well remember what he then did, or what he then said. Some judgment as to the weight this statement should receive, independently of the incontrovertible facts at variance with it,

may be formed from his speaking of the deadly bowie-knife he drew as a small sheath-knife, and of the shameless language and conduct of his wife as "her acts of indiscretion." No one can believe that he thrust his hand under his vest where his bowie-knife was carried without intending to draw it. To believe that he placed his right hand there for any other purpose—such as to rest it after the fatigue of his violent blow in the marshal's face, or to smooth down his ruffled linen—would be childish credulity. But even his own statement admits the assaulting of the marshal, who was endeavoring to enforce the order of the court, and his subsequently drawing a knife to force his way into the room where the marshal had removed his wife. Yet he offers no apology for his conduct, expresses no regret for what he did, and makes no reference to his violent and vituperative language against the judges and officers of the court while under arrest, which is detailed in the affidavits filed. There is nothing in his petition which would justify any remission of the imprisonment. The law imputes an intent to accomplish the natural result of one's acts, and, when those acts are of a criminal nature, it will not accept, against such implication, the denial of the transgressor. No one would be safe if a denial of a wrongful or criminal intent would suffice to release the violator of law from the punishment due to his offenses. Why did the petitioner come into court with a deadly weapon concealed on his person? He knew that as a citizen he was violating the law which forbids the carrying of concealed weapons, and as an officer of the court—and all attorneys are such officers—was committing an outrage upon professional propriety, and rendering himself liable to be disbarred. *Sharon v. Hill*, 11 Sawy 122, 24 Fed. Rep. 726. Therefore, considering the enormity of the offenses committed, and the position the petitioner once held in this state, which aggravates them to a degree not imputable to the generality of offenders, the court, with a proper regard to its own dignity, the majesty of the law, and the necessity of impressing upon all men that forcible resistance to the lawful orders of the courts of the United States will not go unpunished, however high the offending parties, cannot grant the prayer of the petitioner; and it is accordingly denied.

SAWYER and SABIN, JJ., concur.