[No. 1687.]

## IN RE CHARTZ.

1. CONTEMPT—ATTORNEYS—MISCONDUCT IN ARGUMENT. Defendant, an attorney of the supreme court, in a petition for rehearing of a cause in which the supreme court had held a statute limiting the hours of labor constitutional, stated that in his opinion the decisions favoring the power of the state to limit the hours of labor on the ground of the police power of the state were all wrong, were written by men who have never performed manual labor, and by politicians and for politics, and that they did not know what they wrote about. *Held*, that such statement constituted a contempt of the supreme court, which was not purged by defendant's disavowal of any intent to commit a contempt and by his apology.

2. SAME—PUNISHMENT. Defendant for such offense was subject to reprimand and to an order striking the petition from the files, and taxing him with the costs of the contempt proceeding.

ORIGINAL PROCEEDING for contempt against Alfred Chartz. Defendant found guilty. **Reprimanded and warned.**

The facts sufficiently appear in the opinion.

*Alfred Chartz, in propria persona:*

I. I hope that I feel the duties of my office as an attorney-at-law, and at all times obey the orders and decrees of the court, and act gentlemanly and respectfully, and that my per-

sonality will never be considered in my contentions, but that the courts will at all times see only the rights and wrongs of the cases before them.

II.   I have not "back-bitten" in the slightest degree, and am willing to be brought face to face with any one who may have reported that I ever did.   Every thing that I have done has been in public print, in my briefs and in my arguments. I am anxious to show to this court, beyond peradventure or doubt, every thing I have done, and confess from the house-tops, to the end that those who see fit to entrust their rights and interests in my hands shall not be made to suffer on account of my personality.

By the Court; Talbot, J.:

Respondent was commanded to show cause why he should not be adjudged guilty of contempt for having, as an attorney of record in the *Matter of the Application of Peter Kair for a Writ of Habeas Corpus*, filed in this court a petition for rehearing in which he made use of the following statement:

"In my opinion the decisions favoring the power of the state to limit the hours of labor, on the ground of the police power of the state, are all wrong, and written by men who have never performed manual labor, or by politicians and for politics.   They do not know what they wrote about."

Respondent appeared in response to the citation, filed a brief, and made an extended address to the court in which he took the position that the words in question were not con-temptuous, disavowed any intention to commit a contempt of court, and, further, that, if the language was by the court deemed to be objectionable, he apologized for its use and asked that the same be stricken from the petition.

In considering the foregoing statement, it is proper to note that in the briefs filed by respondent upon the hearing of the case in the first instance he used language of similar import, which this court did not take cognizance of, attribu-ting its use to overzealousness upon the part of counsel, but which was of such a nature that the attorney-general in his reply brief referred to it as insinuating that the legislature in enacting, and this court in sustaining, the law, were being

"impelled or controlled by some mythical political influence or fear which exists only in the pyrotechnic imagination of counsel." Also, the case and its condition at the time the objectionable language was used should be taken into consideration. The proceeding in which this petition was filed had been brought to test the constitutionality of a section of an act of the legislature limiting labor to eight hours per day in smelters and other ore reduction works, except in cases of emergency, where life or property is in imminent danger. (Stat. 1903, p. 33, c. 10.) This act had passed the legislature almost unanimously and had received the governor's approval.

At the time of filing the petition respondent was aware that this court had previously sustained the validity of this enactment as limiting the hours of labor in underground mines (*Re Boyce*, 27 Nev. 327, 75 Pac. 1, 65 L. R. A. 47), and in mills for the reduction of ores, smelters, etc. (*Re Kair*, 28 Nev. 127, 425, 80 Pac. 464), and that similar statutes had been upheld by the Supreme Court of Utah and the Supreme Court of the United States in the cases of *State* v. *Holden*, 14 Utah, 71, 86, 46 Pac. 757, 1105, 37 L. R. A. 103, 108; *Holden* v. *Hardy*, 169 U. S. 366, 18 Sup. Ct. 383, 42 L. Ed. 780; *Short* v. *Mining Co.*, 20 Utah, 20, 57 Pac. 720, 45 L. R. A. 603, and by the Supreme Court of Missouri, in *Re Cantwell*, 179 Mo. 245, 78 S. W. 569. It may not be out of place here, also, to note that the latter case has since been affirmed by the Supreme Court of the United States, and more recently the latter tribunal, adhering to its opinion therein and in the Utah cases, has refused to interfere with the decisions of this court in *Re Kair*.

It would seem, therefore, a natural and proper, if not a necessary, deduction from the language in question, when taken in connection with the law of the cases as enunciated by this and other courts, that counsel, finding that the opinion of the highest court in the land was adverse, instead of favorable, to his contentions, in that it specifically affirmed the Utah decision in *Holden* v. *Hardy*, which sustained the statute from which ours is copied, and that all of the courts named were adverse to the views he advocated, had resorted

to abuse of the justices of this and other courts, and to
imputations of their motives.  The language quoted is tanta-
mount to the charge that this tribunal and the Supreme
Courts of Utah, Missouri, and of the United States, and the
justices thereof who participated in the opinions upholding
statutes limiting the hours of labor in mines, smelters, and
other ore reduction works, were misguided by ignorance or
base political considerations.

Taking the most charitable view, if counsel became so
imbued and misguided by his own ideas and conclusions
that he honestly and erroneously conceived that we were
controlled by ignorance or sinister motives, instead of by
law and justice, in determining constitutional or other ques-
tions, and that these other courts and judges and the mem-
bers of the legislature and the governor were guilty of the
accusation he made because they and we failed to follow the
theories he advocated, and that his opinions ought to out-
weigh and turn the scale against the decisions of the four
courts named, including the highest in the land, with nine-
teen justices concurring, nevertheless it was entirely inap-
propriate to make the statement in the brief.  If he really
believed or knew of facts to sustain the charge he made, he
ought to have been aware that the purpose of such a doc-
ument is to enlighten the court in regard to the controlling
facts and the law, and convince by argument, and not to
abuse or vilify, and that this court is not endowed with
power to hear or determine charges impeaching its justices.

On the other hand, if he did not believe the accusation, and
made it with a desire to mislead, intimidate, or swerve from
duty the court in its decision, the statement would be the
more censurable.  So that taking either view, whether respond-
ent believed or disbelieved the heinous charge he made, such
language is unwarranted and contemptuous.  The duty of an
attorney in his brief or argument is to assist the court in
ascertaining the truth pertaining to the pertinent facts, the
real effect of decisions and the law applicable to the case,
and he far oversteps the bounds of professional conduct when
he resorts to misrepresentation, false charges, or vilification.
He may fully present, discuss, and argue the evidence and the

law, and freely indicate wherein he believes that decisions and rulings are wrong or erroneous, but this he may do effectually without making bald accusations against the motives and intelligence of the court, or being discourteous or resorting to abuse which is not argument nor convincing to reasoning minds. If respondent has no respect for the justices, he ought to have enough regard for his position at the bar to refrain from attacking the tribunal of which he is a member, and which the people through the constitution and by general consent have made the final interpreter of the laws which he, as an officer of the court, has sworn to uphold and protect. These duties are so plain that any departure from them by a member of the bar would seem to be wilful and intentional misconduct.

The power of courts to punish for contempt and to maintain decency and dignity in their proceedings is inherent, and is as old as courts are old. It is also provided by statute. By analogy we note the adjudications and penalties imposed in a few of the many cases.

Lord Cottingham imprisoned Edmund Lechmere Charlton, a barrister and member of the House of Commons, for sending a scandalous letter to one of the masters of the court, and a committee from that body, after an investigation, reported that, in their opinion, his "claim to be discharged from imprisonment by reason of privilege of parliament ought not to be admitted." (2 Milne & Craig, 317.)

When the case of *People* v. *Tweed*, in New York City, came up a second time before the same judge, before the trial commenced, the prisoner's counsel privately handed to the judge a letter, couched in respectful language, in which they stated, substantially, that their client feared, from the circumstances of the former trial, that the judge had conceived a prejudice against him, and that his mind was not in the unbiased condition necessary to afford an impartial trial, and respectfully requested him to consider whether he should not relinquish the duty of presiding at the trial to some other judge, at the same time declaring that no personal disrespect was intended toward the judge or the court. The judge retained the letter, and went on with the trial. At the

close of the trial he sentenced three of the writers to a fine
of $250 each, and publicly reprimanded the others, the junior
counsel, at the same time expressing the opinion that if such
a thing had been done by them in England, they would have
been "expelled from the bar within one hour." The counsel
at the time protested that they intended no contempt of
court, that they felt and intended to express no disrespect
for the judge, but that their action had been taken in
furtherance of what they deemed the vital interests of their
client and the faithful and conscientious discharge of their
duty. The judge accepted the disclaimer of personal dis-
respect, but refused to believe the disclaimer of intention to
commit a contempt, and enforced the fines. (11 Alb. Law J.
408; *In re Pryor*, 26 Am. Rep. 752.)

For sending to a district judge out of court a letter stating
that "the ruling you have made is directly contrary to every
principle of law, and everybody knows it, I believe, and it
is our desire that no such decision shall stand unreversed in
any court we practice in," an attorney was fined $50 and
suspended from practice until the amount should be paid. In
delivering the opinion of the Supreme Court of Kansas (*In
re Pryor*, 18 Kan. 72, Am. Rep. 747), Brewer, J., said:
"Upon this we remark, in the first place, that the language
of this letter is very insulting. To say to a judge that a
certain ruling which he has made is contrary to every prin-
ciple of law, and that everybody knows it, is certainly a most
severe imputation. We remark, secondly, that an attorney
is under special obligations to be considerate and respectful
in his conduct and communications to a judge. He is an
officer of the court, and it is therefore his duty to uphold its
honor and dignity. The independence of the profession car-
ries with it the right freely to challenge, criticise, and con-
demn all matters and things under review in evidence. But
with this privilege goes the corresponding obligation of con-
stant courtesy and respect toward the tribunal in which the
proceedings are pending. And the fact that the tribunal is
an inferior one, and its rulings not final and without appeal,
does not diminish in the slightest degree this obligation of
courtesy and respect. A justice of the peace before whom

the most trifling matter is being litigated is entitled to
receive from every attorney in the case courteous and
respectful treatment. A failure to extend this courtesy and
respectful treatment is a failure of duty; and it may be
so gross a dereliction as to warrant the exercise of the
power to punish for contempt. It is so that in every case
where a judge decides for one party he decides against
another; and ofttimes both parties are beforehand equally
confident and sanguine. The disappointment, therefore, is
great, and it is not in human nature that there should be
other than bitter feeling which often reaches to the judge as
the cause of the supposed wrong. A judge, therefore, ought
to be patient, and tolerate everything which appears but the
momentary outbreak of disappointment. A second thought
will generally make a party ashamed of such outbreak. So an
attorney sometimes, thinking it a mark of independence, may
become wont to use contemptuous, angry, or insulting expres-
sions at every adverse ruling, until it becomes the court's
clear duty to check the habit by the severe lesson of a pun-
ishment for contempt. The single insulting expression for
which the court punishes may therefore seem to those know-
ing nothing of the prior conduct of the attorney, and looking
only at the single remark, a matter which might well be
unnoticed; and yet, if all the conduct of the attorney was
known, the duty of interference and punishment might be
clear. We remark, finally, that while, from the very nature
of things, the power of a court to punish for contempt is a
vast power, and one which in the hands of a corrupt or
unworthy judge may be used tyrannically and unjustly, yet
protection to individuals lies in the publicity of all judicial
proceedings, and the appeal which may be made to the legis-
lature for proceedings against any judge who proves himself
unworthy of the power intrusted to him.

Where a contention arose between counsel as to whether a
witness had not already answered a certain question, and the
court, after hearing the reporter's notes read, decided that
she had answered it, whereupon one of the attorneys sprang
to his feet, and, turning to the court, said, in loud tones and
insulting manner: "She has not answered the question"—

held that "the attorney was guilty of contempt, regardless of the question whether the decision of the court was right or wrong." (*Russell* v. *Circuit Judge*, 67 Iowa, 102, 24 N. W. 741.)

In *Sears* v. *Starbird*, 75 Cal. 91, 16 Pac. 531, 7 Am. St. Rep. 123, a brief reflecting upon the trial judge was stricken from the record in the supreme court because it contained the following: "The court, out of a fullness of his love for a cause, the parties to it, or their counsel, or from an over-zealous desire to adjudicate 'all matters, points, arguments, and things,' could not, with any degree of propriety under the law, patch and doctor up the case of the plaintiffs, which, perhaps, the carelessness of their counsel had left in such a condition as to entitle them to no relief whatever." In reference to this language, it was said in the opinion: "Here is a distinct intimation that the judge of the court below did not act from proper motives, but from a love of the parties or their counsel. We see nothing in the record which suggests that such was the case. On the contrary the action complained of seems to us to have been entirely proper. See *Sill* v. *Reese*, 47 Cal. 340. The brief, therefore, contains a groundless charge against the purity of motive of the judge of the court below. This we regard as a grave breach of professional propriety. Every person on his admission to the bar takes an oath to 'faithfully discharge the duties of an attorney and counselor.' Surely such a course as was taken in this case is not a compliance with that duty. In *Friedlander* v. *Sumner G. & S. M. Co.*, 61 Cal. 117, the court said: 'If unfortunately counsel in any case shall ever so far forget himself as wilfully to employ language manifestly disrespectful to the judge of the superior court, a thing not to be anticipated, we shall deem it our duty to treat such conduct as a contempt of this court, and to proceed accordingly.' And the briefs in the case were ordered to be stricken from the files."

In *U. S.* v. *Late Corporation of Church of Jesus Christ of Latter Day Saints* language used in a petition filed, in effect accusing the court of an attempt to shield its receiver and his attorneys from an investigation of charges of gross mis-

conduct in office, and containing the statement that "we must decline to assume the functions of a grand jury, or attempt to perform the duty of the court in investigating the conduct of its own officers," was held to be contemptuous. (Utah, 21 Pac. 519.)

In *Re Terry* (C. C.), 36 Fed. 419, an extreme case, for charging the court with having been bribed, resisting removal from the courtroom by the marshal acting under an order from the bench, and using abusive language, one of the defendants was sent to jail for thirty days and the other for six months. Judge Terry, who had not made any accusation against the court, sought release and to be purged of the contempt by a sworn petition in which he alleged that in the transaction he did not have the slightest idea of showing any disrespect to the court. It was held that this could not avail or relieve him, and it was said: "The law imputes an intent to accomplish the natural result of one's acts, and, when those acts are of a criminal nature, it will not accept, against such implication, the denial of the transgressor. No one would be safe if a denial of a wrongful or criminal intent would suffice to release the violator of law from the punishment due to his offenses."

In an application for a writ of *habeas corpus*, growing out of *Re Terry*, *supra*, Harlan, speaking for the Supreme Court of the United States, said: "We have seen that it is a settled doctrine in the jurisprudence, both of England and of this country, never supposed to be in conflict with the liberty of the citizen, that for direct contempts committed in the face of the court, at least one of superior jurisdiction, the offender may, in its discretion, be instantly apprehended and immediately imprisoned, without trial or issue, and without other proof than its actual knowledge of what occurred, and that according to an unbroken chain of authorities, reaching back to the earliest times, such power, although arbitrary in its nature, and liable to abuse, is absolutely essential to the protection of the courts in the discharge of their functions. Without it, judicial tribunals would be at the mercy of the disorderly and violent, who respect neither the laws enacted for the vindication of public and private rights, nor the

officers charged with the duty of administering them." (128 U. S. 313, 9 Sup. Ct. 83, 32 L. Ed. 405.)

In *Re Woolley*, 74 Ky. 95, it was held that to incorporate into a petition for rehearing the statement that "your honors have rendered an unjust decree," and other insulting matter, is to commit in open court an act constituting a contempt on the part of the attorney; and that, where the language spoken or written is of itself necessarily offensive, the disavowal of an intention to commit a contempt may tend to excuse, but cannot justify the act. From a paragraph in that opinion we quote: "An attorney may unfit himself for the practice of his profession by the manner in which he conducts himself in his intercourse with the courts. He may be honest and capable, and yet he may so conduct himself as to continually interrupt the business of the courts in which he practices, or he may, by a systematic and continuous course of conduct, render it impossible for the courts to preserve their self-respect and the respect of the public and at the same time permit him to act as an officer and attorney. An attorney who thus studiously and systematically attempts to bring the tribunals of justice into public contempt is an unfit person to hold the position and exercise the privileges of an officer of those tribunals. An open, notorious, and public insult to the highest judicial tribunal of the state for which an attorney contumaciously refuses in any way to atone may justify the refusal of that tribunal to recognize him in the future as one of its officers."

In *Re Cooper*, 32 Vt. 262, the respondent was fined for ironically stating to a justice of the peace: "I think this magistrate wiser than the supreme court." Redfield, C. J., said: "The counsel must submit in a justice court, as well as in this court, and with the same formal respect, however difficult it may be either here or there. We do not see that the relator has any alternative left him but the submission to what he no doubt regards as a misapprehension of the law, both on the part of the justice and of this court. And in that respect he is in a condition very similar to many who have failed to convince others of the soundness of their own views, or to become convinced themselves of their fallacy."

In *Mahoney* v. *State* (Ind. App.), 72 N. E. 151, an attorney was fined $50 for saying: "I want to see whether the court is right or not. I want to know whether I am going to be heard in this case in the interest of my client, or not"—and making other insolent statements.

In *Redman* v. *State*, 28 Ind. 205, the judge informed counsel that a question was improper, and the attorney replied: "If we cannot examine our witnesses, he can stand aside." This language was deemed offensive, and the court prohibited that particular attorney from examining the next witness.

In *Brown* v. *Brown*, 4 Ind. 627, 58 Am. Dec. 641, the lawyer was taxed with the cost of the action for filing and reading a petition for divorce which was unnecessarily gross and indelicate.

In *McCormick* v. *Sheridan* (Cal.), 20 Pac. 24: "A petition for rehearing stated that 'how or why the honorable commissioner should have so effectually and substantially ignored and disregarded the uncontradicted testimony, we do not know. It seems that neither the transcript nor our briefs could have fallen under the commissioner's observation. A more disingenuous and misleading statement of the evidence could not well be made. It is substantially untrue and unwarranted. The decision seems to us to be a travesty of the evidence.' Held that counsel drafting the petition was guilty of contempt committed in the face of the court, notwithstanding a disavowal of disrespectful intention. A fine of $200 was imposed, with an alternative of serving in jail."

The Chief Justice, speaking for the court in *State* v. *Morrill*, 16 Ark. 384, said: "If it were the general habit of the community to denounce, degrade, and disregard the decisions and judgments of the courts, no man of self-respect and just pride of reputation would remain upon the bench, and such only would become the ministers of the law as were insensible to defamation and contempt. But happily, for the good order of society, men, and especially the people of this country, are generally disposed to respect and abide the decisions of the tribunals ordained by government as the common arbiters of their rights. But where isolated individuals, in violation of the better instincts of human nature, and disregardful of law

and order, wantonly attempt to obstruct the course of public justice by disregarding and exciting disrespect for the decisions of its tribunals, every good citizen will point them out as proper subjects of legal animadversion. A court must naturally look first to an enlightened and conservative bar, governed by a high sense of professional ethics, and deeply sensible, as they always are, of its necessity to aid in the maintenance of public respect for its opinions."

In *Sommers* v. *Torrey*, 5 Paige (N. Y.) 64, 28 Am. Dec. 411, it was held that the attorney who put his hand to scandalous and impertinent matter stated against the complainant and one not a party to the suit is liable to the censure of the court and chargeable with the cost of proceedings to have it expunged from the record.

In *State* v. *Grailhe*, 1 La. Ann. 183, the court held that it could not consistently with its duty receive a brief expressed in disrespectful language, and ordered the clerk to take it from the files.

Referring to the rights of courts to punish for contempt, Blackford, J., in *State* v. *Tipton*, 1 Blackf. (Ind.) 166, said: "This great power is intrusted to those tribunals of justice for the support and preservation of their respectability and independence. It has existed from the earliest period to which the annals of jurisprudence extend; and except in a few cases of party violence, it has been sanctioned and established by the experience of ages"

See, also, *Lord Mayor of Landon's Case*, 3 Wils. 188; opinion of Kent, C. J., in *Case of Yates*, 4 Johns. (N. Y.) 317; *Johnston* v. *Commonwealth*, 1 Bibb (Ky.) 598.

At page 206 of Weeks on Attorneys (2d ed.) it is said: "Language may be contemptuous, whether written or spoken, and, if in the presence of the court, notice is not essential before punishment, and scandalous and insulting matter in a petition for rehearing is equivalent to the commission in open court of an act constituting a contempt. When the language is capable of explanation, and is explained, the proceedings must be discontinued; but, where it is offensive and insulting *per se*, the disavowal of an intention to commit a contempt may tend to excuse, but cannot justify, the

act.  From an open, notorious, and public insult to a court, for which an attorney contumaciously refused in any way to atone, he was fined for contempt, and his authority to practice revoked."

Other authorities in line with these we have mentioned are cited in the note to *Re Cary* (D. C.), 10 Fed. 632, and in 9 Cyc. p. 20, where it is said that contempt may be committed by inserting in pleadings, briefs, motions, arguments, petitions for rehearing, or other papers filed in court insulting or contemptuous language, reflecting on the integrity of the court.

By using the objectionable language stated respondent became guilty of a contempt which no construction of the words can excuse or purge.  His disclaimer of any intentional disrespect to the court may palliate, but cannot justify, a charge which under any explanation cannot be construed otherwise than as reflecting on the intelligence and motives of the court, and which could scarcely have been made for any other purpose unless to intimidate or improperly influence our decision.  As we have seen, attorneys have been severely punished for using language in many instances not so reprehensible, but in view of the disavowal in open court we have concluded not to impose a penalty so harsh as disbarment or suspension from practice, or fine or imprisonment.  Nor do we forget that, in prescribing against the misconduct of attorneys, litigants ought not to be punished or prevented from maintaining in the case all petitions, pleadings, and papers essential to the preservation and enforcement of their rights.

It is ordered that the offensive petition be stricken from the files, that respondent stand reprimanded and warned, and that he pay the costs of this proceeding.

Norcross, J.:  I concur.

Fitzgerald, C. J., concurring:

In this matter my concurrence is special and to this extent: The language used by the respondent in his petition for a rehearing, and on which this contempt proceeding was based, was, in my opinion, contemptuous of this court, and, of

course, should not have been used. The respondent, however, in response to the order of the court to show cause why he should not be punished therefor, appeared and disclaimed any intention to be disrespectful or contemptuous, and moved that, if the court deemed the language contemptuous, the said language be stricken out of his petition. Respondent not only contended and said that he had no intention to be disrespectful or contemptuous, but he also earnestly contended that the language charged against him and which he admitted having used was not disrespectful or contemptuous. In this last contention, I think, he was plainly in error.

The duty of courts in matters of this kind is indeed an unpleasant one, such, at least, has it always appeared to me. Yet it must sometimes be done.

Therefore I concur in the conclusion reached, and in the order stated in the opinion of Justice TALBOT, to wit: "It is ordered that the offensive petition be stricken from the files, that respondent stand reprimanded and warned, and that he pay the costs of this proceeding."